374

## In re DUBILIER.

### Patent Appeal No. 3063.

Court of Customs and Patent Appeals.
Jan. 3, 1933.

Samuel Ostrolenk, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting, for want of patentability over the prior art, claims 23 and 24 of appellant's application, filed May 11, 1923.

The appealed claims read as follows:

"23. In a composite system, a conductor carrying a power supply and high frequency currents superimposed thereon, impedance offering a negligible impedance to said power currents and a high impedance to the high frequency currents and comprising inductance and capacity connected in series with said conductor, one end of said impedance being connected to said conductor, a load connected to the other end of said impedance operated by the power supply, a receiver for the reception of the high frequency signals also connected to the other end of said impedance and means for shunting said first impedance to permit said signalling currents to operate said receiver.

"24. In a composite system, a conductor carrying a power supply and high frequency currents superimposed thereon, means offering a negligible impedance to said power currents and a high impedance to said signalling currents, one end of said means being connected to said conductor a load connected to the other end of said means operated by the power supply, a receiver for the reception of the high frequency signals also connected to the other end of said means and means for disabling said first means to permit said signalling currents to operate said receiver."

The references relied upon are: French Patent to Drahtlose Tel., 520,285, pub. June 23, 1921; Libby, 1,365,926, January 18, 1921; Frankis, 1,354,290, September 28, 1920.

The subject-matter of appellant's application relates to a system of broadcasting high frequency signals over the wires of a power system, said wires at the same time being in use for the transmission of low frequency commercial electrical current. It is not contended that the simultaneous transmission over one circuit of two currents of different frequencies is new. The object of the alleged invention is an arrangement whereby a subscriber for electric current may enjoy uninterrupted commercial service, and may also be enabled by means of a receiver to hear the broadcast signals upon complying with some requirement to entitle him to this privilege, such as the placing of a coin in a control device; if such requirement is not complied with, the broadcast signals are not available, but in either case the ordinary power current is not affected. In the accomplishment of this, appellant shows the ordinary power line carrying service to various branches. In each branch there is interposed in series with each of the feed wires an impedance, the design of which is such that it offers little or no opposition to the flow of the low frequency power supply, but constitutes a prohibitive impedance to the passage of the signaling currents, which are transmitted at a relatively high frequency. Accordingly, when said impedance is inserted in the line, the result is that, while the power current passes on to the subscriber without hindrance, he is unable to receive the broadcast signals because the impedance, while in circuit, chokes such signaling current out of the branch line. In order to permit the clearing of the branch line to permit the reception of the broadcast signals, appellant shows a switch designed to be clos-

ed across the terminals of the impedance means, thereby short-circuiting or shunting the same; thereupon both the power current and broadcast signaling current will pass along the switch, since this constitutes a path of less resistance to both, and the subscriber, when this switch is closed, will be able to receive the broadcast programs. While the claims on appeal do not include any such device specifically, the application contemplates a means of permitting the subscriber at his election to bring about the short-circuiting of the impedance, such as by a coin device, and thereby be enabled to receive the programs.

With respect to the design of the impedance to be interposed in the line, appellant has the following to say in his specification: "In connecting an inductance or impedance in series with the lines, it may be found in certain circumstances that the said inductances or impedance introduces into circuit a resistance sufficiently great to cause considerable losses to occur in respect of the commercial current and to produce a heating up of the coils resulting in further serious objections. In order to reduce these losses and the heating up of the coils to a minimum the inductances or impedance is made up of a few turns only and is magnetically coupled to another inductance, which may be termed a secondary inductance, of many turns, and a condenser is connected across the ends of the said secondary inductance. * * *"

The drawings of appellant's application show such an arrangement, having inductances in the lines of the branches, and magnetically coupled with each of them is a secondary inductance, across which latter there is connected a condenser.

The French reference relates to high frequency telegraphy or telephony conducted over wires already in use for the transmission of high intensity, relatively low frequency, power current. The patentee shows a stretch of transmission line, at each end of which is located high voltage, low frequency, power transformers. At one end of the transmission line there is magnetically coupled to the line a transmitting station for the transmission of the signaling currents, and at the other end of said transmission line there is magnetically coupled a receiving apparatus. According to the patentee, the success of such a system was seriously menaced by the fact that the highly inductive power transformers at each end of the line resulted in a reflection back to the line of the high frequency signaling impulses, resulting in an un-satisfactory transmission of the signaling currents on the one hand and a consequently unsatisfactory reception of them on the other. This trouble was taken care of by the insertion in each of the lines, between the transmitting station and the power apparatus at one end of the line, and between the receiving station and the power apparatus at the other end of the line, of an ohmic resistance, across which was also connected an impedance. The operation of this device, as gathered from the patent, was as follows: The impedance in each line was of such a design that the signaling currents, being of high frequency, would be unable to pass through said impedances, said signaling currents thereupon being forced to take the path through the ohmic resistance, which was of such a value that the signaling currents would be absorbed, in the form of heat, by their passage through said resistances. The result of this was that the signaling currents would be either totally excluded from the power transformers or other power apparatus, or so nearly so as to obviate the possibility of any serious reflection of the signaling impulses back upon the line. At the same time, the inductance was of such a design as to offer no appreciable impedance to the ordinary power current, which is of a relatively low frequency, and accordingly the power current would pass through the said impedances rather than through the relatively high resistance of the resistors.

Figure 4 of the French patent shows a main line 17 and a branch line 22, in the wires of which branch line are connected the inductances and resistances above described. At the end of this branch line, however, there is not shown any low frequency apparatus, such as transformers, as are shown in figure 3, upon which our previous description of the French patent is based. The Board of Appeals held that this showed the application of the impedances to a branch line, just as did Dubilier; appellant argues that, while no power apparatus is shown in such branch line, it is impliedly there, and that such condition differentiates this drawing from the situation treated by him, where, as in the ordinary house, no such apparatus is present. We do not regard this question as of great importance to this case, but we may say that we are disposed to accept appellant's view of it. The French patent shows in the conductors of the branch line in figure 4 precisely the same impedance means as is shown in figure 3. Accordingly, it would seem that the same conditions which neces-

sitated the arrangement in figure 3 are impliedly present in the branch line in figure 4.

Both the Examiner and the Board of Appeals held that the French patent showed the use of an impedance for the purpose of excluding currents of high frequency, which at the same time offered no serious opposition to the passage of low frequency commercial currents.

While it is true that the French patentee ultimately treats the high frequency currents differently than does Dubilier, inasmuch as the former dissipates them in the form of heat in the resistances, it is, nevertheless, true that the effect of the impedances of the French structure is to exclude high frequency currents *from passing through said impedances while at the same time permitting power current to flow unimpeded through them.* Accordingly, the French patent shows a means whereby the high frequency currents are excluded from passage therethrough without interfering with the passage of power currents.

The Board of Appeals in its decision said: "* * * The examiner takes the position that there would be no invention in placing a radio receiving set in this branch line [the branch line of the French patent already discussed] beyond the impedance means and in rendering the radio frequency current available by the use of a low impedance shunt in view of the suggestions of the Libby patent."

The low impedance shunt referred to in this quotation is merely a switch shown in Libby for the short-circuiting of certain apparatus in order to eliminate its effect in a circuit. Appellant contends that to place a radio receiver in the French circuit, as suggested by the Board of Appeals in the above quoted language, would be inoperative because, when the reactances and resistances were short-circuited by the "low impedance shunt," the same difficulty would be met in the French circuit that the reactance coils and resistances were designed to prevent. While this is true, we do not think it concludes the matter. We believe that the French patent does show the use of an impedance in a circuit, the function of which is to exclude passage therethrough of the high frequency signaling currents, while permitting unimpeded flow of power current. The question remains whether, in view of such disclosure and the other references, it required more than ordinary skill to bring about the arrangement shown by Dubilier.

With respect to claim 23 above quoted, the Examiner stated in his decision as follows:

"In claim 23 it is stated that the inductance and capacity are connected in parallel [series]. This is effectively true, since the co-operation of E and F with the coil D gives an action similar to that which would be obtained by connecting a condenser across D, so that both the condenser and the inductance D would be in series with the line.

"The French patent shows, in Fig. 3, a line 17 for the transmission of power currents between transformers 15 and 16, and shows high frequency signaling apparatus, including a transmitter 18 and receiver 19. To prevent passage of high frequency signaling currents to undesired points, inductances 21 shunted by resistances 20 are inserted in the lines, the combination offering a negligible interference to the passage of power currents, but substantially preventing the passage of high frequency currents. Fig. 4 shows a modification wherein a branch 22 is connected across the conductors 17, with means similar to that of Fig. 3 for permitting the passage of power currents, but excluding the high frequency currents. * * *

"This reference does not, however, disclose the form of impedance claimed nor the means for shunting it. However, there would be no invention in replacing this impedance with an arrangement as shown in Fig. 2 of Libby, wherein an impedance including an inductance and condenser is connected in series with a conductor and provided with a switch for short-circuiting it. With the impedances in each of the branch wires 22 replaced by one of these arrangements, high frequency currents could be admitted to or excluded from 22 at will, whereby a receiver connected to 22 would or would not be capable of receiving signals from 18. As an optional arrangement, the elements E, G, and H of Frankis, corresponding to applicant's elements D, E, F, might be used in conductors 22 of the French patent and short-circuiting switches provided, as suggested by Libby."

An examination of claim 23 shows that the impedance means claimed is described therein as "comprising inductance and capacity connected in series with said conductor." The Solicitor for the Patent Office in his brief urges that this language is met by the ordinary inductance coil alone, since the word "impedance" includes capacity as well as inductance, and since such a coil would have an inherent distributed capacity. While it is true that the word "impedance"

includes capacity, and also that a coil has a certain amount of distributed capacity, it is to be observed that the Examiner has otherwise construed this element of the claim; he found that the description of the impedance stated in said claim 23 as "comprising inductance and capacity" was "effectively true, since the co-operation of E and F with the coil D [references are to the Dubilier drawings] gives an action similar to that which would be obtained by connecting a condenser across D, so that both the condenser and the inductance D would be in series with the line." We think that the language quoted from the claim, respecting the character of the impedance, contemplates a separate capacity to be associated with the inductance.

The Examiner further found that "this reference [the French patent] *does not, however, disclose the form of impedance claimed nor the means for shunting it.*" (Italics ours.) He thereupon passed on to a consideration of Libby and Frankis with respect to the form of impedance claimed and the means of shunting it.

Frankis shows, in a radio tuning circuit, an inductance coil, coupled to which is a secondary coil, across which latter coil there is connected a condenser. The object of Frankis was to utilize said coupled circuit for the purpose of tuning the whole circuit with a view to permitting the maximum flow of one signal current while avoiding the flow of another having a frequency close to the one desired. The coupled structure of Frankis appears to be very much the same, diagramatically, as the coupled arrangement of Dubilier; the principal differences are that in the secondary circuit of Frankis the condenser is a variable one, and it also appears that the primary of his impedance means is tapped to permit of the connection of different turns of wire in the main circuit. These differences do not appear to us to be of importance for the purpose of the present discussion. We have already adverted to the language of the Examiner relating to the theory upon which the structure of Dubilier met the impedance means claimed in claim 23; it is our opinion that the same reasoning is applicable to make this showing of Frankis likewise read upon claim 23 in this respect. It is, of course, true that Frankis was dealing with high frequency currents alone, and had a different problem before him; that these currents were of comparatively small volume, and consequently the wires used in his coils would be correspondingly small. It follows, of course, that the exact structure of Frankis would be inoperative in the Dubilier or the French circuits because the high resistance of the coil would be such as to preclude a circuit offering "negligible impedance to said power currents." The question therefore is whether or not it required the exercise of the inventive faculty so to modify the construction shown by Frankis to adapt it to the conditions faced by Dubilier.

With regard to Libby, we hold that this reference clearly shows it to be old in the art to utilize a short-circuiting switch to nullify the effect of apparatus in a circuit, said apparatus being ineffective when said switch is closed.

It thus appears that all of the elements of claim 23 are old in the electrical art, and the question remains whether to combine these elements as done by Dubilier required the exercise of the inventive faculty. Inasmuch as this is a highly technical matter and the tribunals of the Patent Office have agreed that the arrangement claimed in 23 did not involve the exercise of the inventive faculty, we believe that the rule applies that concurring decisions of the Patent Office will not be disturbed unless manifest error is shown. We are not convinced that such error has been shown, and we believe that the rejection of said claim 23 should be affirmed.

With respect to claim 24, the Examiner found that it was met by merely providing the impedances of the French patent with short-circuiting switches, as shown by Libby. This claim does not require that the impedance consist of a separate inductance and capacity, as the Examiner construed claim 23 to call for, and we are in agreement with the tribunals of the Patent Office that said claim 24 is not patentable in view of the disclosures of the French patent and Libby.

While the decision of the Board of Appeals follows closely that of the Examiner, the latter was more detailed in its discussion of the issues and the references, and for that reason we have deemed it a better basis for our discussion.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.